ORIGINAL

BURKE, WILLIAMS & SORENSEN, LLP
Stephen H. Galton (SBN 046732)
galton@bwslaw.com
Keiko J. Kojima (SBN 206595)
kkojima@bwslaw.com
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Telephone: 213.236.0600
Facsimile: 213.236.2700

Attorneys for Defendants Provident Life and Accident Insurance Company and Unum Group

FILED
2008 JUN 12 AM 10:06
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY KNH DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

HOWARD MILLER, M.D.,

Plaintiff,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION; and DOES 1 through 10, Inclusive,

Defendants.

Case No. '08 CV 1041 LAB LSP

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)**

**[DIVERSITY OF CITIZENSHIP]**

TO PLAINTIFF HOWARD MILLER, M.D. AND TO HIS ATTORNEYS OF RECORD:

Defendants Provident Life and Accident Insurance Company ("Provident") and Unum Group, formerly known as UnumProvident Corporation ("Unum") [collectively "Removing Defendants"], hereby serve notice of their removal of the above-entitled action to the United States District Court for the Southern District of California from the Superior Court of the State of California for the County of San Diego, and respectfully allege as follows:

**PLEADINGS AND PROCEEDINGS TO DATE**

1. On May 8, 2008, an action was commenced in the Superior Court of the State of California for the County of San Diego, entitled Howard Miller, M.D. vs. Provident Life and Accident Insurance Company and UnumProvident Corporation, and Does 1-10, Inclusive, Defendants, under Case No. 37-2008-00083651-CU-IC-CTL. Attached hereto as Exhibit "A" is a true copy of the Summons and Complaint in said action, together with the following additional pleadings: Civil Case Cover Sheet and Notice of Case Assignment. These documents are the only pleadings filed with the court as of this date. No responsive pleadings have as yet been filed by any defendants.

2. Defendants Provident and Unum were served with summons and complaint on May 14, 2008. Removing Defendants are informed and believe that there has been no service of process upon Defendants Does 1 through 10, inclusive.

**DIVERSITY OF CITIZENSHIP**

3. Defendant Provident is a corporation, organized and existing under the laws of the State of Tennessee, with its principal place of business in Chattanooga, Tennessee.

4. Defendant Unum, formerly known as UnumProvident Corporation, is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in Chattanooga, Tennessee.

5. The complaint names as additional defendants Does 1 through 10, inclusive. These fictitious defendants have not been served with summons and

## TIMELINESS OF REMOVAL

8. The summons and complaint in this action were served upon Removing Defendants on May 14, 2008. This notice of removal is filed within 30 days of said date, and within one year of the date of commencement of the action. This removal is therefore timely under 28 U.S.C. § 1446(b).

## VENUE

9. This is a suit of a wholly civil nature brought in a California court. The action is pending in San Diego County, California and, accordingly, under 28 U.S.C. §§ 84(d) and 1441(a), the United States District Court for the Southern District of California is the proper forum for removal.

WHEREFORE, Removing Defendants Provident and Unum notify Plaintiff and his attorneys that the action, formerly pending in the Superior Court of the State of California for the County of San Diego, Case No. 37-2008-00083651-CU-IC-CTL, has been removed from that court to this United States District Court, Southern District of California.

Dated: June 12, 2008

Burke, Williams & Sorensen, LLP
Stephen H. Galton
Keiko J. Kojima

By: [signature]
Stephen H. Galton
Attorneys for Defendants Provident Life and Accident Insurance Company and Unum Group

EXHIBIT A

SUM-100

FILE BY FAX

# SUMMONS
# (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
CIVIL BUSINESS OFFICE 7
CENTRAL DIVISION

08 MAY -8 PM 3:09

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
Provident Life and Accident Insurance Company; UNUMProvident Corporation and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Howard Miller M.D.

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court County of San Diego
220 West Broadway
San Diego, CA 92101

CASE NUMBER: *(Número del Caso):* 37-2008-00083651-CU-IC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael B. Horrow DONAHUE AND HORROW LLP
222 N. Sepulveda Blvd. 20th Floor El Segundo, CA 90245 (310) 335 2006

DATE: *(Fecha)* MAY - 9 2008 Clerk, by *(Secretario)* R Vela, Deputy *(Adjunto)*

R. Vela

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL] SUPERIOR COURT SAN DIEGO COUNTY, CA

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. www.USCourtForms.com

**EXHIBIT A**

ORIGINAL

05



MICHAEL B. HORROW #162917
DONAHUE & HORROW LLP
222 North Sepulveda Blvd.
20th Floor
El Segundo, CA 90245
Telephone: (310) 335-2006
Fax: (310) 335-2001
Email: mhorrow@donahuehorrow.com

Attorneys for Plaintiff
HOWARD MILLER M.D.

FILED
CIVIL BUSINESS OFFICE 7
CENTRAL DIVISION

08 MAY -8 PM 3: 10

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| HOWARD MILLER M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION; AND, DOES 1 THROUGH 10, INCLUSIVE,,<br><br>Defendants. | Case No.: 37-2008-00083651-CU-IC-CTL<br><br>COMPLAINT AND JURY DEMAND<br><br>1. Breach of the Duty of Good Faith and Fair Dealing<br>2. Breach of Contract<br><br>FILE BY FAX |

Plaintiff alleges as follows:

GENERAL ALLEGATIONS

Introduction

1. Prior to his disability, Plaintiff, HOWARD MILLER, MD. ("DR. MILLER"), was a Clinical Infectious Disease Physician, with a hospital based practice was at Scripps Memorial Hospital. Unfortunately, as of January 1, 2004 DR. MILLER could no longer perform the material and substantial duties of his occupation on a full time basis due a sensitivity to noxious odors, fragrances, perfumes, bright lights and certain foods. As a result, he submitted a claim to Defendant, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY ("PROVIDENT").



Donahue & Horrow LLP




EXHIBIT A

2. For n[redacted] four years (March 2004 through Janua[redacted]08) the Defendants determined that DR. MILLER was entitled to benefits under the terms of the subject Policy and paid him the benefits to which he was entitled. On or about January 31, 2008, Defendant denied further benefits by:

- UNREASONABLY ignored the opinions of DR. MILLER's treating physicians and instead relied upon the biased opinions of Defendants' biased in-house medical department physicians;
- UNREASONABLY relied upon a flawed and biased vocational analysis and financial review;
- UNREASONABLY required DR. MILLER to pay premiums on the subject Policy even though he continued to be disabled and entitled to Waiver of Premium under the terms of the subject Policy;

Factual Summary

3. Plaintiff is, and at all relevant times was, a resident and citizen of the State of California.

4. Plaintiff alleges upon information and belief that the Defendant, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Tennessee, and authorized to transact and transacting the business of insurance in this state.

5. Plaintiff alleges upon information and belief that the Defendant, UNUMPROVIDENT CORPORATION ("UNUMPROVIDENT"), f/k/a Provident Companies, Inc., is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Tennessee, and authorized to transact and transacting the business of insurance in this state, and/or, is a non-insurance holding company, and, PROVIDENT is a direct wholly-owned subsidiary of UNUMPROVIDENT CORPORATION.

6. On June 30, 1999, Unum Corporation merged with and into Provident Companies, Inc. under the surviving company name of UNUMPROVIDENT CORPORATION.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein,

EXHIBIT A

UNUMPRO[illegible]ENT so used its control of PROVIDEN[illegible]/or used the corporate assets of PROVIDENT as to render PROVIDENT into UNUMPROVIDENT's corporate alter ego. Additionally, Plaintiff alleges upon information and belief that Plaintiff's claims were investigated, evaluated and adjusted by individuals employed by UNUMPROVIDENT.

8. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 10, are unknown to plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to plaintiff.

9. On or about September 19, 1989, PROVIDENT issued Disability Income Policy #06-337-5008023 to DR. MILLER. A copy of the subject Policy is attached hereto as Exhibit "A." According to the terms of Policy, if DR. MILLER became residually or totally disabled, PROVIDENT promised to pay him a monthly benefit of $15,000, after a 90 day Elimination Period, for life.

10. Per the Policy "RESIDUAL DISABILITY" means that due to Injuries or Sickness:

> 1) you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time a it would normally take you to do them;
>
> 2) you have a Loss of Monthly Income in your occupation of at least 20%; and
>
> 3) you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

11. The Policy contain a Waiver of Premium clause which states that PROVIDENT will waive payment of premium as follows:

> If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

EXHIBIT A

fund any premiums which became due were paid while you were so disabled; and

2) waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.

12. Plaintiff has paid all premiums due under the Policy to Defendants at all relevant times and has performed all of his obligations under the Policy.

13. On or about November 7, 2005, Plaintiff filed a claim for benefits with Defendant.

14. On or about January 30, 2006, DR. MILLER provide a detailed summary to Defendants of his health conditions and disability:

- "My training is in Clinical Infectious Diseases. With regards to my occupational duties, my practice is essentially 100% hospital work."
- "I become involved in direct patient care only at the invitation of other physicians (consulted by other physicians) to help diagnose, treat and manage fever producing diseases..."
- "My specialty is a cognitive one. My 'procedure' is my ability think clearly, respond quickly, make life saving decisions often with very little data, and to counsel physicians, families, nursing, and other staff on complex medical issues."
- "I think it is harmful to me to keep working in my present occupation of bedside clinical infectious diseases."
- "As my work day goes on- usually within a couple of hours of being in the environment I am not functioning at 100%. Rest and medicines have not cured the problem, but being away from the work place helps."
- "Presently, I become symptomatic after about 2-3 hours in the hospital and usually by 4 hours I do not feel well."
- "It now takes me 2-3 times as long to do my tasks as it did 10 years ago. I have a very difficult time concentrating resulting from the eye issues (spasms, pain, edema, conjunctivitis, etc), and other "hyper-reactive" symptoms which all just decrease my ability work safely."

- "Oth[illegible]mptoms which now occur include mus[illegible]ches, flushing of my face, periorbital edema, hand and forearm flushing, hand and feet burning, hypersensitivity of my face, nasal congestion, peri-obicular muscle spasms and hoarseness, depending on the amount of edema."
- "Just this past Thursday, January 19, 2008, I developed atrial fibrillation, and eventually was medically converted. A week later I had another recurrence, and now must take a heart medication for this new problem."

15. On or about February 3, 2006, Plaintiff met with Defendant's field representative Jeff Evans.

16. On or about Mary 16, 2006, Plaintiff wrote to Defendant regarding inquiries made by Defendant to Plaintiff's colleagues"

- "This 'intrusion' creates professional difficulties for me."
- "Although, I recognize your duty to verify certain issues in the evaluation of my claim, the manner in which this was done was quite shocking and embarrassing to me. I respectfully request you not discuss anything further with my colleagues who may not have any idea of what my issues are. My matter is very private and you seem to be violating my privacy, and I don't want your 'methods' to possibly jeopardize my effectiveness in working in this environment."

17. On or about June 29, 2006, Plaintiff wrote to Defendant to inquire as to the status of his claim:

- "It has been almost 8 months since I filed my disability claim. Communication from you has been spotty, and I am worried my case has "fallen through the cracks."
- "I feel I have been very patient with your process and have provided you with all the requested documentation, But I am now quite upset."
- "My physician communicated with your medical staff over 2 weeks ago, I've heard nothing at all from your company."
- "Because you have not begun my payments, this has forced me to continue my exposure by working, which, in turn, exacerbates my illness."

EXHIBIT A

18. On or about September 15, 2006, Plaintiff wrote to Defendant again to inquire as to the status of his claim and need for a second field visit:

- "Why do you expect me to meet again with yet another representative? Why haven't I received the letter you promised me regarding what further information would be required to help expedite my claim? It's been well over a month since I sent my last letter to you and I still have heard nothing- not even a simple response regarding the premium that was due?"
- "Why do you want me to start over in this process? I've cooperated with you, and have answered all questions to the best of my ability, and I intend to continue to do so, but I feel you are treating me very unfairly. You have had more than adequate time to review my case- now almost 11 months!"

19. On or about October 24, 2006, Plaintiff met with Defendant's field representative Rick Guame.

20. On or about December 4, 2006, Plaintiff wrote to Defendant to obtain a status of Defendant's decision on his claim for benefits:

- "I filed for disability over one year ago. During this time I have made every good faith effort to cooperate, comply with your process and provide you with the requested information in a timely manner."
- "Your recent correspondence letter I just received (Nov. 6) from you appears to negate all the work, effort, interviews, phone calls, correspondence, providing of documents and written "assignments," forms mailed to my colleagues for completion, etc. This endurance test has taken over one year of my time to provide your company all of the comprehensive, requested documentation."
- "You have in your files now over 99% of the information needed to act on my claim. You have all my financials, medical documentation, and all my written and verbal statements as to my partial disability claim."
- "I have yet to receive one dime from your company, despite the "elimination period" of 90 days being well satisfied over NINE MONTHS ago."

- "I th[illegible] have been more than patient with your [illegible]pany; I am now financially strapped because of your delay, and this is creating further issues."

21. On or about January 22, 2007, Defendant advised Plaintiff his claim has been approved and benefits were issued from January 1, 2004 to January 1, 2006, minus the Elimination Period.

22. On or about July 9, 2007, Defendant advised Plaintiff of the issuance of payment for the calendar year 2006 under a Reservation of Rights.

23. Pursuant to the January 31, 2008 denial letter, Defendants concluded, solely based on their in-house physicians' reviews, that DR. MILLER did not have any restrictions and limitations and therefore no longer met the definition of disability under the Policy.

24. Not only did Defendants unreasonably deny DR. MILLER his disability benefit payments, they compounded their unreasonable deeds by then requiring DR. MILLER to pay premiums under the Policy.

25. To date, DR. MILLER continues to be entitled to benefits under the terms of the subject Policy. However, Defendants, acting jointly and in accordance with a common scheme or plan, have unreasonably failed and refused to pay him those benefits. And, defendant UNUMPROVIDENT has ratified and participated in Defendants' continuing denial of plaintiff's benefits under the Policy.

PLAINTIFF, HOWARD MILLER, M.D., FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION; and, DOES 1 through 10, inclusive, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGES:

26. Plaintiff refers to each and every paragraph of the General Allegations and incorporates those paragraphs as though set forth in full in this cause of action.

27. Defendants, and each of them, have breached their duty of good faith and fair dealing owed to Plaintiff in the following respects:

a) Unreasonably failing to make disability benefit payments to Plaintiff at a

EXHIBIT A

time when Defendants knew that Plai[illegible] was entitled to the payments under the terms of the Policy.

b) Unreasonably delaying disability benefit payments to Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

c) Unreasonably withholding disability benefit payments from Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

d) Unreasonably misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to the coverage in issue.

e) Failing to reasonably and promptly investigate and process Plaintiff's claim for disability benefits.

f) Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim for benefits in which liability has become reasonably clear.

g) Failing to promptly provide a reasonable explanation of the basis relied upon in the Policy, in relation to the applicable facts, for the denial of Plaintiff's claim for benefits.

h) Plaintiff is informed and believes and thereon alleges that Defendants have breached their duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

28. As a proximate result of the aforementioned unreasonable conduct of Defendants, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

29. As a further proximate result of the aforementioned unreasonable conduct of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to his general damage in a sum to be determined at the time of trial.

30. As a further proximate result of the unreasonable conduct of Defendants, Plaintiff was

EXHIBIT A

compelled to [illegible] legal counsel to obtain the benefits du[illegible]der the Policy. Therefore, Defendants are liable to Plaintiff for those attorneys' fees, witness fees and costs of litigation reasonably necessary and incurred by Plaintiff in order to obtain the Policy's benefits in a sum to be determined at the time of trial.

31. Defendants' conduct described herein was intended by the Defendants to cause injury to Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under CCP §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

32. Defendants' conduct described herein was undertaken by the corporate Defendants' officers or managing brokers, identified herein as DOES 1 through 10, who were responsible for claims supervision and operations, underwriting, communications and/or decisions. The aforedescribed conduct of said managing brokers and individuals was therefore undertaken on behalf of the corporate Defendants. Said corporate Defendants further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing brokers whose precise identities are unknown to Plaintiff at this time and are therefore identified and designated herein as DOES 1 through 10, inclusive.

PLAINTIFF, HOWARD MILLER, M.D., FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION; and, DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT, ALLEGES:

1. Plaintiff refers to each and every paragraph of the General Allegations and incorporates those paragraphs as though set forth in full in this cause of action. Defendants, and each of them, owed duties and obligations to Plaintiff under the Policy.

EXHIBIT A

2. Defendants, and each of them, breached the terms and provisions of the insurance Policy by failing and refusing to pay benefits under the Policy as set forth in the second paragraph of the First Cause of Action, incorporated herein by reference.

3. As a direct and proximate result of Defendants' conduct and breach of its contractual obligations, Plaintiff has suffered damages under the Policy in an amount to be determined according to proof at the time of trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

AS TO THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION; and DOES 1 through 10, inclusive, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING:

1. Damages for failure to provide disability benefits under the Policy, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

2. General damages for mental and emotional distress in a sum to be determined at the time of trial;

3. For attorneys' fees, witness fees and costs of litigation incurred by Plaintiff to obtain the Policy's benefits in an amount to be determined at the time of trial;

4. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

5. For costs of suit incurred herein; and,

6. For such other and further relief as the Court deems just and proper.

AS TO A SECOND CAUSE OF ACTION AGAINST DEFENDANTS PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION; and DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT:

1. Damages under the Policy in an amount to be determined according to proof at the time

of trial;

2. For costs of suit incurred herein; and,

3. For such other and further relief as the Court deems just and proper.

DATED: April 21, 2008

DONAHUE & HORROW LLP

MICHAEL B. HORROW
Attorneys for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DONAHUE & HORROW LLP

MICHAEL B. HORROW
Attorneys for Plaintiff

EXHIBIT A

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time. The premiums shown in the Policy Schedule on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

# D I S A B I L I T Y   I N C O M E   P O L I C Y

**HOWARD MILLER MD, the Insured**
**Policy Number 06-337-5008023**

**THIS POLICY IS A REWRITE FROM OTHER COVERAGE -- SEE PAGE 3**

**10 day right to examine your policy** - We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

337

DUPLICATE

10/18/2005 10:34 8586775822 NOLAN PAGE 02

EXHIBIT A

GUIDE TO POLICY PROVISIONS

| | Page |
|---|---|
| Renewal Conditions | 1 |
| Policy Schedule | 3 |
| UPDATE | 3 |
| Definitions (Injuries, Sickness, Physician, Total Disability, your occupation, period of disability, Elimination Period) | 4 |
| Exclusions | 5 |
| Pre-existing Condition Limitation | 5 |
| Benefits | |
| Total Disability | 6 |
| Transplant Surgery | 6 |
| Cosmetic Surgery | 6 |
| Waiver of Premium | 6 |
| Rehabilitation | 7 |
| Benefits When Policy Renewed After Your 65th Birthday or Five Years, Whichever is Later | 7 |
| Payment for Part of Month | 7 |
| Additional Benefit | |
| Residual Disability/Recovery (includes revised Waiver of Premium provision) | 8 |
| Premiums and Renewals | |
| Policy Term | 12 |
| Grace Period | 12 |
| Conditional Right to Renew After Your 65th Birthday or Five Years Whichever is Later - Premiums Are Not Guaranteed | 12 |
| Reinstatement | 12 |
| Suspension During Military Service | 13 |
| Premium Adjustment at Death | 13 |
| Claims | |
| Notice of Claim | 13 |
| Claim Forms | 13 |
| Proof of Loss | 13 |
| Time of Payment of Claims | 14 |
| Payment of Claims | 14 |
| Physical Examinations | 14 |
| Misstatement of Age | 14 |
| Legal Actions | 14 |
| General Provisions | |
| Time Limit on Certain Defenses | 14 |
| Conformity With State Statutes | 14 |
| Assignment | 14 |

READ YOUR POLICY CAREFULLY

10/18/2005 10:34 8586775822 NOLAN PAGE 03

EXHIBIT A

Insured - HOWARD ●ER MD
Effective Date - August 1, 1989
Issue Date - September 19, 1989

Policy Nu● - 06-337-5008023
First Renewal Date - November 1, 1989
Renewal Term - Three Months

Policy Premium payable from August 1, 1989 until the first UPDATE Increase Date (see Page 3 (cont.)) is at the Annual rate of $6,438.57 on a non smoking premium basis.

Other Premium Paying Methods:
$3,283.67 Semi-Annually
$1,674.02 Quarterly
$547.29 Monthly (Preauthorized Bank Draft only)

MONTHLY BENEFIT FOR TOTAL DISABILITY

$12,000.00

ELIMINATION PERIOD

90 days of Total and/or Residual Disability

An Elimination Period starting after your 65th birthday must consist entirely of days of Total Disability

MAXIMUM BENEFIT PERIODS FOR TOTAL DISABILITY

Injuries:

| | |
|---|---|
| Total Disability starting before your 65th birthday | for Life |
| Total Disability starting on or after your 65th birthday but before your 75th birthday | 24 months |
| Total Disability starting on or after your 75th birthday | 12 months |

Sickness:

| | |
|---|---|
| Total Disability starting before your 60th birthday | for Life |
| Total Disability starting on or after your 60th birthday but before your 61st birthday | to your 65th birthday |
| Total Disability starting on or after your 61st birthday but before your 62nd birthday | 48 months |
| Total Disability starting on or after your 62nd birthday but before your 63rd birthday | 42 months |
| Total Disability starting on or after your 63rd birthday but before your 64th birthday | 36 months |
| Total Disability starting on or after your 64th birthday but before your 65th birthday | 30 months |
| Total Disability starting on or after your 65th birthday but before your 75th birthday | 24 months |
| Total Disability starting on or after your 75th birthday | 12 months |

ADDITIONAL BENEFIT
(The premium shown for this benefit is included in the Policy Premium shown above.)

(Policy Schedule is continued on next page.)

EXHIBIT A

Residual Disability/Recovery ..............................Page 8 Premium $1,228.04

**Maximum Benefit Periods For Residual Disability**

**Injuries or Sickness:**

Residual Disability starting before your 61st birthday ...................................... To your 65th birthday

Residual Disability starting on or after your 61st birthday but before your 62nd birthday ...................................... 48 months

Residual Disability starting on or after your 62nd birthday but before your 63rd birthday ...................................... 42 months

Residual Disability starting on or after your 63rd birthday but before your 64th birthday ...................................... 36 months

Residual Disability starting on or after your 64th birthday but before your 65th birthday ...................................... 30 months

---

**THIS POLICY IS ISSUED IN LIEU OF AND REPLACES:**

**POLICY NO. 06-335-852186 DATED June 1, 1988**

**The Pre-existing Condition Limitation and Incontestable provisions in this policy are waived up to the extent of that which was earned for the same benefits provided by the policy it replaced.**

(Policy Schedule is continued on next page.)

UPDATE

The benefits and premium named below will be automatically increased without evidence of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit for Total Disability | New Annual Premium for this Policy |
|---|---|---|
| 8/01/90 | $12,840.00 | $6,959.24 |
| 8/01/91 | $13,740.00 | $7,542.64 |
| 8/01/92 | $14,710.00 | $8,209.19 |
| 8/01/93 | $15,000.00 | $8,419.72 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown. If an UPDATE Increase Date shown does not coincide with a renewal date for this policy, the increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability. If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived. When you resume paying premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not accept an increase, your refusal:

1. forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2. postpones the schedule of benefit increases to the next UPDATE Increase Date, if any;
3. adjusts the premiums for the remaining increases, if any, since such premiums are based on your attained age at the time of an UPDATE Benefit increase; and
4. in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit increases to which you were entitled by one.

If you have not reached your 60th birthday on the last UPDATE Increase Date, you may apply for an amendment providing additional UPDATE Benefit increases. You can do this by making formal application within the period of 60 days prior to and 31 days after the last UPDATE Increase Date. Approval will be subject to our underwriting guidelines then in effect.

10/18/2005 10:34 8586775822 NOLAN PAGE 06

EXHIBIT A

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than twelve months after the end of the previous period (six months after the end of the previous period if benefits are expressed as a number of months - see Maximum Benefit Periods on Page 3);

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

EXHIBIT A



If the Elimination Period is fulfilled during a period of disability, the first subsequent disability due to a different or unrelated cause will not require an Elimination Period, provided the first subsequent disability occurs within the twelve month period from the end of the prior disability, during which the Elimination Period was satisfied.

## EXCLUSIONS

We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability or the day of disability following the Elimination Period.

   Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. Examples of conditions that are not complications include false labor and morning sickness.

We will not pay benefits for loss we have excluded by name or specific description; any such exclusion will appear in the Policy Schedule.

## PRE-EXISTING CONDITION LIMITATION

We will not pay benefits for loss which is caused by a Pre-existing Condition. Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A medical condition means a sickness or physical condition which either: 1) resulted in your receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

EXHIBIT A

## BENEFITS

**TOTAL DISABILITY**

We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

**TRANSPLANT SURGERY**

You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

**COSMETIC SURGERY**

You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

**WAIVER OF PREMIUM**

After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

EXHIBIT A

**REHABILITATION**

Total Disability - Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you notify us in writing that you want to participate in a program of occupational rehabilitation, we will consider paying for certain expenses you incur. The extent of our role will be determined by written agreement with you. Generally, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work and be:

1. a formal program of rehabilitation at an accredited graduate school, college or business school, or at a licensed vocational school;
2. a recognized program operated by the federal or a state government; or
3. any other professionally planned rehabilitation program of training or education.

**BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER**

If this policy is continued in accordance with the "Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit provisions on Pages 6 and 7 will be included in the continued policy. (If a Treatment of Injuries Benefit and/or a Preliminary Term Benefit is contained in this policy, it can be included in the continued policy. No other "Additional Benefits", if any, named on Page 3 will be included in the continued policy.) The Maximum Benefit Period starting while this policy is so continued is shown on Page 3. The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**

If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

EXHIBIT A

Income
(Nothing in this provision limits the policy definition of "Total Disability.")

DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability. If you elect the cash accounting method we will not include income received for services rendered prior to the start of the period of disability in your current monthly income.

**Prior Monthly Income** means the greatest of:

1. your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2. your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3. your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Monthly Income** means your Monthly Income in your occupation for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

**Residual Disability** or **residually disabled**, during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability** or **residually disabled** then means that as a result of the same Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income. We will waive this requirement when continued care would be of no benefit to you.

EXHIBIT A

**Monthly Benefit for Total Disability** is shown on Page 3. (It can be increased by certain other benefit provisions if they are included in your policy and are applicable. If included, they are titled "Cost of Living Adjustments" and "Social Insurance Substitute Benefit.")

**Residual Disability Monthly Benefit** is the benefit payable under this provision. It is determined monthly by this formula. Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

**RESIDUAL DISABILITY/RECOVERY BENEFITS**

We will pay Residual Disability Monthly Benefits as follows:

1. Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2. Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period shown on Page 3.
3. The first six monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income. Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

## COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
(Applicable to benefits paid after the 12th month of a period of disability)

### Definitions

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

**Review Date** means each anniversary date of the start of a period of disability.

**Review Period** means a one year period ending on a Review Date.

**Index Month** means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

**Index Factor** is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

   An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

10/18/2005 10:34 8586752822 NOLAN PAGE 13

EXHIBIT A

2. Indexing of Prior Monthly Income will end o earliest of:

   a. the end of the period of disability (see Page 4);
   b. the end of a benefit period; or
   c. your 65th birthday.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment. A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

**WAIVER OF PREMIUM**

For periods of disability which start before your 65th birthday, the Waiver of Premium provision on Page 6 is replaced by the following:

"WAIVER OF PREMIUM - TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1. refund any premiums which became due and were paid while you were so disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability."

NOTE: **All portions of this Residual Disability/Recovery Benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date and benefits may continue to be payable past your 65th birthday, as shown on Page 3.**

EXHIBIT A

## PREMIUMS AND RENEWALS

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time. If you stop working, (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid on time. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in the continued policy are described on Page 7.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

**SUSPENSION DURING MILITARY SERVICE**
If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before your 65th birthday, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended. In all other respects you and we will have the same rights under the policy as before it was suspended.

**PREMIUM ADJUSTMENT AT DEATH**
Any premium paid for a period beyond the date of your death will be refunded to your estate.

## CLAIMS

**NOTICE OF CLAIM**
Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

**CLAIM FORMS**
When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

**PROOF OF LOSS**
If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

EXHIBIT A

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Michael B. Horrow #162917
DONAHUE AND HORROW LLP
222 North Sepulveda Blvd. 20th Floo. El Segundo, CA 90245

TELEPHONE NO.: 310 335 2006 FAX NO.: 310 335 2001
ATTORNEY FOR (Name): Plaintiff, Howard Miller M.D.

FOR COURT USE ONLY
CIVIL BUSINESS OFFICE 7
CENTRAL DIVISION
08 MAY -8 PM 3:10
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 220 West Broadway
MAILING ADDRESS: 220 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

CASE NAME:
Miller v. Provident Life and Accident et al.

**CIVIL CASE COVER SHEET**

[✓] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**

[ ] Counter [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 37-2008-00083651-CU-IC-CTL

JUDGE:

DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [✓] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [✓] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [ ] Substantial amount of documentary evidence
   - d. [ ] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✓] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action *(specify)*:
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 9, 2008
Michael B. Horrow
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

**EXHIBIT A**

COPY

FILE BY FAX

32




| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101 | |
| BRANCH NAME: Central | |
| TELEPHONE NUMBER: (619) 685-6028 | |
| PLAINTIFF(S) / PETITIONER(S): Howard Miller MD | |
| DEFENDANT(S) / RESPONDENT(S): PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY et.al. | |
| MILLER MD VS. PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER: 37-2008-00083651-CU-IC-CTL |

Judge: William R. Nevitt, Jr. Department: C-64

**COMPLAINT/PETITION FILED:** 05/09/2008

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**EXHIBIT A**

# PROOF OF SERVICE BY MAIL

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 444 South Flower Street, Suite 2400, Los Angeles, California 90071-2953. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On June 12, 2008, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s): **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)**; in a sealed envelope, postage fully paid, addressed as follows:

Donahue & Horrow LLP
Michael B. Horrow (SBN 162917)
222 N. Sepulveda Blvd., 20th Floor
El Segundo, CA 90245
Tel: (310) 335-2006
Fax: (310) 335-2001
Email: mhorrow@donahuehorrow.com

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on June 12, 2008, at Los Angeles, California.

Barbara W. Jeong

Barbara W. Jeong

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
HOWARD MILLER, M.D.

**DEFENDANTS**
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION

FILED 2008 JUN 12 AM 10: 05
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

(b) County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Donahue & Horrow LLP
Michael B. Horrow (SBN162917)
222 N. Sepulveda Blvd., 20th Floor
El Segundo, CA 90245
(310) 335-2006

Attorneys (If Known)
Burke, Williams & Sorensen, LLP
Stephen H. Galton (SBN 46732)
444 S. Flower Street, Suite 2400
Los Angeles, CA 90071-2953
(213) 236-0600

'08 CV 1041 LAB LSP

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

CONTRACT
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

TORTS

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities – Other
- ☐ 440 Other Civil Rights

PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
- **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus – Alien Detainee
- ☐ 465 Other Immigration Actions

BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. § 1441(a)

Brief description of cause:
Action under insurance policy to recover disability benefits.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE
June 12, 2008

SIGNATURE OF ATTORNEY OF RECORD
Stephen H. Galton

FOR OFFICE USE ONLY

RECEIPT # 151877 AMOUNT $350 APPLYING IFP JUDGE MAG. JUDGE

TAC 6/12/08

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 151877 - TC

June 12, 2008
10:08:03

Civ Fil Non-Pris
USAO #.: 08CV1041
Judge..: LARRY A BURNS
Amount.: $350.00 CK
Check#.: BC69510

Total-> $350.00

FROM: HOWARD MILLER, M.D.
VS.
PROVIDENT LIFE AND ACCIDENT
INSURANCE CO.